IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LYNN A. MEYER,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) **Case No.** 14-cv-00062-SMY-CJP |
| **CAROLYN W. COLVIN,**  **Acting Commissioner of Social Security,** | ) ) ) ) |
| **Defendant.** | ) ) ) |

## MEMORANDUM and ORDER

**Yandle, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Lynn A. Meyer is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).

## Procedural History

Plaintiff applied for benefits on February 26, 2010, alleging disability beginning on February 19, 2009. (Tr. 23). The alleged onset date was the day after his prior application for benefits was denied. (Tr. 46). After holding an evidentiary hearing, Administrative Law Judge (ALJ) Dina R. Loewy denied the application in a decision dated August 15, 2012. (Tr. 23-32). The Appeals Council denied review and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1

1. The ALJ erred in determining plaintiff's RFC by failing to include additional limitations, failing to sufficiently cite medical evidence, improperly weighing expert opinions, and not accounting for new evidence submitted to the Appeals Council.

2. The ALJ failed to properly evaluate plaintiff's credibility and address plaintiff's specific testimony.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he

is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of

3

law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Loewy followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of reflex sympathetic disorder (RSD) and a history of cervical fusion. The ALJ further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light level with physical limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was unable to perform his past relevant work as a heavy equipment operator. However, he was not disabled because he was able to do other work that exists in significant numbers in the regional and national economies. (Tr. 23-32).

**The Evidentiary Record**

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

1. **Agency Forms**

Plaintiff was born in 1960 and was 49 years old at the alleged onset date. He was insured for DIB through June 30, 2013. (Tr. 226). He graduated from high school and had no specialized training. (Tr. 231).

Plaintiff worked as a heavy equipment operator in a steel mill for ten years prior to becoming injured. (Tr. 232). According to plaintiff, reflex sympathetic dystrophy, nerve damage in his right arm and hand, high cholesterol, and neck problems limited his ability to work. (Tr. 230).

Plaintiff submitted Function Reports in May and September 2010. (Tr. 238-48, 282-91). He stated that he had two cervical fusions that caused nerve damage and chronic pain in his neck, right shoulder, right arm, and right hand. (Tr. 238). Plaintiff stated that his nerve pain increased at night and made sleeping more difficult. (Tr. 239, 283). He could prepare simple meals, do light cleaning, and take care of his laundry. (Tr. 240, 284). Plaintiff could drive as long as the weather was not bad and he shopped for food about once a week. (Tr. 241, 285).

Plaintiff said he had trouble lifting, squatting, bending, reaching, sitting, climbing stairs, completing tasks, concentrating, and using his hands. He was unable to lift anything over 35 pounds from the ground to his waist. (Tr. 243, 287). Plaintiff was prescribed several medications that caused side effects such as dizziness, upset stomach, weakness, and light headedness. (Tr. 245, 289).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on April 19, 2012. (Tr. 40). He was 52 years old and stated he was 6'1" and weighed 220 pounds. (Tr. 44). Plaintiff was initially injured in 2003 while at work. He had two cervical spinal fusion surgeries, one in 2005 and another in 2006, but he felt they were not fully successful. (Tr. 47). Plaintiff received a workmen's compensation settlement in 2008 and since then has had no source of income. (Tr. 45). He attempted to find new work several times but stated that companies would not hire him due to his medical history. (Tr. 49-50).

Plaintiff testified that he was diagnosed with reflex sympathetic dystrophy (RSD) related to his neck injury and his previous surgeries. (Tr. 53-54). He stated his right hand would change colors, his fingers would swell, and his right arm would have a tingling for days at a time. (Tr. 53-55). Additionally, he had lower back pain due to a bad disc and his left arm recently began to experience pain. (Tr. 56, 62). Plaintiff felt nighttime and weather changes increased his pain. (Tr. 55). Plaintiff took Vicodin, over the counter medications, and used Lidoderm patches to help with his pain. (Tr. 52). He testified that the Lidoderm patches made him lightheaded and the Vicodin made him tired. He stated he took Vicodin three to four times a week and could take up to four pills in a day. (Tr. 53).

Plaintiff testified that he lived alone and his father drove him to the hearing. He was able to drive but had difficulty driving in traffic because he was unable to easily turn his head to see other cars. (Tr. 45, 62). He occasionally hired people to help him clean his home and cooked small meals. (Tr. 59). He felt the most he could lift with his right arm was a gallon of milk. Plaintiff stated he smoked half a pack of cigarettes a day and consumed alcohol a few times a week. His last hospitalization was due to a fall he took while drinking. He testified that he smoked marijuana once or twice a week when his arm bothered him. (Tr. 58).

6

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do light work, limited to occasional pushing or pulling with the right upper extremity. He should not reach overhead with either extremity and could not frequently perform gross and fine manipulations with his right upper extremity. Additionally, he needed to avoid concentrated exposure to extreme temperatures, wetness, humidity, irritants, unprotected heights, chemicals, and hazardous machinery. (Tr. 68-70).

The VE testified that the person could not perform any of plaintiff's previous work. However, the person could do jobs that exist in significant numbers in the national economy. Examples of such jobs are cashier and sub assembler. (Tr. 69). The VE testified that if the person could not ever perform fine manipulation all jobs would be precluded. Additionally, no work would be available if he was unable to engage in sustained work activity for a full eight hour workday, forty hours a week. (Tr. 70). The VE stated employers would typically not allow two or more unexcused absences per month. (Tr. 71).

### 3. Medical Treatment

In March 2010 plaintiff saw Dr. T.C. Kopjas, an internal medicine specialist, with increased numbness and tingling in his right arm and hand. He opined that plaintiff's gross and fine motor skills with his right hand were greatly diminished due to swelling. He felt plaintiff's ability to perform many job duties would be impeded by these problems. (Tr. 329). In May, Dr. Kopjas noted that Neurontin and Prednisone had not been helpful. He reported a diagnosis of RSD. (Tr. 376). Plaintiff did not see Dr. Kopjas again until October 2011 when he needed a refill on his hydrocodone. Plaintiff had neck and joint pain but no other notable symptoms. (Tr. 498-99).

Plaintiff began seeing Dr. Bijoy Hegde, a rehabilitation physician, in July 2010 at the recommendation of Dr. Kopjas. (Tr. 350-51). He initially noted plaintiff had mild swelling on his right side and his forearm and wrist were held rigid. He opined that steroids would no longer be effective to treat plaintiff. (Tr. 350). Dr. Hegde advised plaintiff to get a bone scan and try new medications. (Tr. 351). The records indicate plaintiff had the bone scans performed and had no significant findings. (Tr. 352). Plaintiff returned to Dr. Hegde in August 2010 and stated the medications made him ill. Dr. Hegde advised plaintiff to try Lidoderm patches, a TENS unit, isotonic glove, and use Topamax. (Tr. 349).

Plaintiff saw Dr. Hegde several more times through 2011. Dr. Hegde regularly reported swelling and sensitivity in plaintiff's right arm and hand. He continued to prescribe Lidoderm patches and pain medications. Plaintiff occasionally showed some improvement, but consistently complained of pain in his right arm. (Tr. 322-23, 419-23). In November 2011, Dr. Hedge noted plaintiff was doing "much better" as long as he used his Lidoderm patches and Vicodin. (Tr. 419).

In October 2011 plaintiff began treatment with chiropractor Jason Strotheide. (Tr. 383-87). Dr. Strotheide saw plaintiff numerous times a month through March 2012. (Tr. 382-490). Plaintiff's condition remained primarily the same, with occasional instances of improvement or deterioration. (Tr. 398, 410, 414, 469). Dr. Strotheide reported moderate limitations in plaintiff's spinal range of motion. (Tr. 433)

### 4. RFC Assessment

Dr. Frank Jimenez, a state agency consultant, assessed plaintiff's physical RFC in July 2010. He reviewed medical records but did not examine plaintiff. He opined plaintiff was able to perform work at the light exertional level, i.e. frequently lift 10 pounds and occasionally lift 20 pounds. He could occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl.

Plaintiff could never climb ladders or scaffolds and had limited handling and fingering. (Tr. 341-43).

### 5. Consultative Examination

In June 2010, Dr. Raymond Leung performed a consultative examination on plaintiff. He noted plaintiff's right grip and arm strength were 4+/5. His impressions were that plaintiff had a history of fusion from C5 to C7 for herniated discs and a diagnosis of RSD in his right arm. Plaintiff had some difficulties manipulating a small object with his right arm. Additionally, plaintiff had a significantly decreased range of motion in his cervical spine. (Tr. 336).

### 6. Opinions of Treating Physicians

In May 2011, Dr. Hegde assessed plaintiff's physical capabilities. He felt plaintiff's prognosis was poor due to fatigue, weakness, increased muscle tension, pain, numbness or tingling, swelling, and atrophy. He opined plaintiff could stand or walk for less than two hours and sit for about two hours total in an eight hour workday. Plaintiff could occasionally crouch, rarely twist and stoop, and never climb ladders or stairs. (Tr. 326). Dr. Hegde opined that plaintiff's right arm could rarely reach in all directions, handle, finger, or fuel. He stated plaintiff would miss work more than three times a month due to his impairments. (Tr. 327).

Dr. Strotheide provided his assessment of plaintiff's capabilities in October 2011. (Tr. 382-86). He felt plaintiff's fatigue, weakness, unstable walking, increased muscle tension or spasm, impaired sleep, pain, crepitus, numbness tingling or other sensory disturbance, depression, and headaches made him have a guarded prognosis. Plaintiff could stand, walk, or sit for less than two hours out of an eight hour workday. Dr. Strotheide opined plaintiff would need to elevate his legs and have unscheduled breaks every thirty minutes. (Tr. 382).

### 7. Records Not Before the ALJ

After the ALJ issued her decision, plaintiff submitted additional medical records to the Appeals Council in connection with his request for review. See AC Exhibits List, Tr. 5. Thus, the medical records at Tr. 507-23, designated by the Appeals Council as Exhibit 18F, 19F, and 20F were not before the ALJ. Therefore, they cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012); *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

Plaintiff does not argue that the Appeals Council erroneously refused to consider the additional medical records as new and material evidence pursuant to 20 C.F.R. §404.970(b). Rather, his argument is, in effect, that the Appeals Council erred in denying review. See, Doc. 15, pp. 11-12. However, that is an argument that this Court cannot entertain.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain review in this Court of a "final decision of the Commissioner of Social Security." When the Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner, and it is the decision of the ALJ which is reviewed by this Court. 20 C.F.R. §404.981; *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993). The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and it is not subject to review by this Court. 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

It is true that the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law. *Farrell*, 692 F3d at 770-771. Here, plaintiff has not cited *Farrell* and has not argued that the Appeals Council committed a mistake of law. Accordingly, the Appeals Council order denying review stands,

and this Court cannot consider the additional records from Dr. Hegde and Dr. Kopjas in reviewing for substantial evidence.

## Analysis

Plaintiff argues first that the ALJ incorrectly determined plaintiff's RFC by failing to consider additional limitations, not sufficiently citing medical evidence in support of the RFC, and improperly analyzing his treating source's opinions. As plaintiff relies in part on his testimony for his arguments regarding the RFC, the Court will first consider his second argument that the ALJ erred in his credibility analysis.

It is well-established that the credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

The ALJ is required to give "specific reasons" for his credibility findings and to analyze the evidence rather than simply describe the plaintiff's testimony. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)(The ALJ "must justify the credibility finding with specific reasons supported by the record.") The ALJ may rely on conflicts between plaintiff's testimony and the objective record, as "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, if the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff first takes issues with the ALJ's usage of boilerplate language that has been

11

criticized in cases such as *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010), and *Brindisi v. Barnhart*, 315 F.3d 783 (7th Cir. 2003). However, the use of the boilerplate language does not necessarily require remand. The use of such language is harmless where the ALJ goes on to support his conclusion with reasons derived from the evidence. See, *Pepper v, Colvin*, 712 F.3d 351, 367-368 (7th Cir. 2013); *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir 2012).

Plaintiff argues that the ALJ's analysis was insufficient as she did not address the credibility of specific portions of his testimony, explain the basis for rejecting this testimony, or clarify how much weight she actually gave the testimony. Contrary to plaintiff's suggestion, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, at *3.

Some of the reasons the ALJ used for determining plaintiff's credibility were not sound. ALJ Loewy stated that plaintiff did not demonstrate most of the signs typically associated with chronic, severe musculoskeletal pain. She seemingly did not find reasoning for this opinion from a doctor's report, and erred in using this to form her credibility analysis. The Seventh Circuit has held that it is impermissible for an ALJ to "play doctor" and substitute her opinion for that of a doctor. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). Plaintiff's treating physicians never questioned the legitimacy of his pain and continually wrote prescriptions. Here, the ALJ decided that because symptoms such as muscle atrophy, muscle spasms, or neurological deficits were not present he did not have chronic severe pain. This is error.

Ultimately, however, ALJ Loewy considered the appropriate factors and supported her

conclusion with reasons derived from evidence. The Seventh Circuit has held that not all of the ALJ's reasons have to be sound as long as "enough of them are." *Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009).

First, she looked at plaintiff's treatment history. She noted the record was "devoid of any recent medical treatment." (Tr. 28). Plaintiff's last treatment notes relating to his condition were from November 2011 when he needed a medication refill. (Tr. 497).[1] Additionally, the ALJ notes that the records indicate plaintiff was not always compliant with his medications. (Tr. 28). For example, plaintiff testified to taking Vicodin three or four times a week. However, his records indicated he only refilled his prescription once in 2010, once in 2011, and three times in 2012. (Tr. 502-05).[2]

She thoroughly reviewed plaintiff's medical history and analyzed the record. She noted that plaintiff claimed lower back pain beginning in 2003 but his first treatment for any lower back pain was in 2011. (Tr. 26). Additionally, she noted Dr. Kopjas's exams indicated primarily normal findings regarding plaintiff's musculoskeletal impairments. (Tr. 28). Plaintiff claimed to have new pain in his left arm however his records indicated his left arm was fully functional. (Tr. 28).

The ALJ's credibility assessment need not be "flawless;" it passes muster as long as it is not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). See, SSR 96-7p. The analysis is deemed to be patently wrong "only when the ALJ's determination lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008). Here, the analysis is far from patently wrong. It is evident that ALJ Loewy considered some of the

---

[1] While plaintiff submitted additional records to the Appeals Council, those were not considered by the ALJ or this Court.
[2] The Court acknowledges the record shows plaintiff was uninsured during this time. However, plaintiff failed to argue that the reason he did not seek additional treatment or refill his prescriptions more frequently stemmed from being uninsured.

13

appropriate factors and built the required logical bridge from the evidence to her conclusions about plaintiff's testimony. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Therefore, her credibility determination stands.

Plaintiff argues the ALJ erred in determining his RFC by not considering his additional limitations. His first argument in support of this is that the opinions of Dr. Strotheide and Dr. Hegde were not given the appropriate weight.

A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical evidence and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).

The version of 20 C.F.R. §404.1527(c)(2) in effect at the time of the ALJ's decision states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

It must be noted that, "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two

14

conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527(d).

Thus, the ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record. *Henke v. Astrue*, 498 Fed.Appx. 636, 639 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)**.** In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

ALJ Loewy met and exceeded this "lax" standard. First, the ALJ noted that Dr. Strotheide was not an acceptable medical source under 20 C.F.R. 404.1513 and therefore his opinion could not establish the presence of a medically determinable impairment. SSR 06-3p. However, ALJ Loewy still evaluated Dr. Strotheide's opinion. She noted Dr. Strotheide had only seen plaintiff for two months prior to his analysis of plaintiff's capabilities. In those two months, his treatment records indicate plaintiff had shown improvements in several areas and was responding well to treatment. This is in direct contrast to his opinion. (Tr. 29). These reasons are sufficient for giving Dr. Strotheide's opinion little to no weight.

Plaintiff also takes issue with the ALJ's decision to give Dr. Hegde's opinion little weight. First, she notes that Dr. Hegde's opinion was insufficient as it did not articulate an objective medical basis for the extreme limitations indicated and was inconsistent with his own treatment records and conservative course of treatment. For example, Dr. Hegde stated plaintiff could only stand or walk for less than two hours and sit for about two hours in a workday. However, his notes fail to indicate any problems with plaintiff's lower extremities. Dr. Hegde

stated plaintiff was unable to carry anything with his right hand while plaintiff testified to being able to carry a gallon of milk. The ALJ felt Dr. Hegde's opinion was based on plaintiff's subjective complaints rather than independent medical findings as his opinion failed to note from where the extreme limitations were derived. (Tr. 30). Plaintiff's argument inadvertently supports this contention as he recites portions of the record where Dr. Hegde's treatment notes state plaintiff complained of pain. However, he fails to show any objective medical findings in support of the limitations supported by Dr. Hegde.

The ALJ felt the state agency consultants opinions were more consistent with the objective medical findings such as physical examinations and diagnostic tests. (Tr. 30). It is proper for the ALJ to rely upon the assessment of a state agency consultant. *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005); *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." Social Security Ruling 96-6p, at 2**.**   Here, the opinions of Dr. Jimenez provide sufficient support for ALJ Loewy's RFC assessment.

Plaintiff also argues that additional limitations involving sitting, standing, walking, fine and gross manipulation, work breaks and work absences were not discussed appropriately by the ALJ. Plaintiff's support for these limitations comes from his own testimony and the opinions of Drs. Hegde and Strotheide. However, as noted above, the ALJ determined plaintiff was not entirely credible and he appropriately gave Dr. Strotheide's opinion "little to no weigh weight" and Dr. Hegde's opinion "little weight." Plaintiff attempts to use treatment records as an indication that plaintiff and the doctors' opinions are consistent, but the treatment records cited primarily note plaintiff's self-described complaints.

In sum, plaintiff's argument on both of his points is, in effect, nothing more than an

invitation for the Court to reweigh the evidence. However, the reweighing of evidence goes far beyond the Court's role. Even if reasonable minds could differ as to whether Mr. Meyer is disabled, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Loewy committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Lynn Meyer's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATED:** April 16, 2015

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**